IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELAFOI DOLY,<br><br>        Petitioner,<br><br>    v.<br><br>PAUL COPENHAVER, WARDEN,<br><br>        Respondent. | Case No. 1:14-cv-00522-LJO-MJS<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2241. Petitioner presents several challenges to a disciplinary proceeding leading to the loss of good conduct time.

**I.    JURISDICTION**

    **A.    Subject Matter Jurisdiction**

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that the custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). Although a federal prisoner who challenges the validity or constitutionality of his conviction must file

1

a petition for writ of habeas corpus under 28 U.S.C. § 2255, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000).

Petitioner's claims arise out of a disciplinary hearing conducted on July 11, 2012, in which the discipline hearing officer ("DHO"), C. Sylvester, found that Petitioner committed the prohibited act of stealing. 28 C.F.R. § 541.3, Code 219. (Ex. 4E, Hernandez Decl.) The DHO found that Petitioner had stolen food products from the prison dining hall and sanctioned Petitioner with a loss of twenty-seven days of good conduct time, imposed thirty days of disciplinary segregation, and suspended commissary and phone privileges for 90 days. (Id.)

Petitioner asserts a general violation of his due process rights. Specifically, Petitioner contends that the incident report violated the Federal Bureau of Prisons (BOP) disciplinary process because it was served on him more than 24 hours after the incident. (See generally Pet., ECF No. 1 at 11-12.) Petitioner also contends that the DHO based the charge on insufficient evidence. (Id.)

If a constitutional violation has resulted in the loss of time credits, it affects the duration of a sentence and may be remedied by way of a petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990). The Court concludes that it has subject matter jurisdiction over the petition.

**B.     Jurisdiction over the Person**

28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." A writ of habeas corpus operates not upon the prisoner, but upon the prisoner's custodian. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-495 (1973). A petitioner filing a petition for writ of habeas corpus under § 2241 must file the petition in the judicial district of the Petitioner's custodian. Brown v. United States, 610 F.2d 672, 677 (9th Cir.

1990). The warden of the penitentiary where a prisoner is confined constitutes the custodian who must be named in the petition, and the petition must be filed in the district of confinement. Id.; Rumsfeld v. Padilla, 542 U.S. 426, 446-47 (2004). It is sufficient if the custodian is in the territorial jurisdiction of the court at the time the petition is filed; transfer of the petitioner thereafter does not defeat personal jurisdiction that has once been properly established. Ahrens v.Clark, 335 U.S. 188, 193 (1948); Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990).

While the disciplinary hearing occurred at the United States Penitentiary in Victorville, Petitioner was incarcerated at the United States Penitentiary in Atwater, California (USP Atwater) at the time of filing this petition. USP Atwater is located within the Eastern District of California. Paul Copenhaver, Warden at USP Atwater, is Petitioner's custodian and the proper respondent to this habeas action.

## II.  **FACTUAL BACKGROUND**

On or about June 13, 2012, Correctional Officer Marquez conducted a pat down of Petitioner and subsequently caught him attempting to leave the dining hall with approximately ten pounds of raw chicken and five pounds of potatoes on his person. (Ex. 1, Hernandez Decl.; Att. 4.)

On the date of the incident, Petitioner was charged with violating discipline code 219: "stealing," and provided a written copy of the incident report. (Ex. 1, Hernandez Decl.; Att. 4.) After hearing the incident report, Petitioner stated, "I did not have anything in my possession." (Id., Box 17; but see, Att. 4B) (noting that Petitioner gave the following statement: "Yes, it's true I had those items.")

On the incident report, the date of the incident is recorded as June 13, 2012. (Id., Box 4.) However, the reporting employee signed and dated the report as occurring on June 13, 2011, rather than June 13, 2012.[1] (Id., Boxes 11, 12.) Petitioner appeared at the

---
[1] This appears to be a typographical error indicating the incident occurred in 2011 rather than 2012.

3

disciplinary hearing on July 11, 2012. (Ex. 1, Hernandez Decl.) In his defense, Petitioner stated, "The Officer did not find anything on me." (Id., Att. 4E.) Petitioner chose not to request any witnesses or present any documentary evidence. (Id.) After considering all the relevant evidence, the DHO found that the greater weight of the evidence supported the finding that Petitioner committed the prohibited act of "stealing." (Id.) Sanctions of disallowance of good conduct time, disciplinary segregation, and suspension of commissary privileges were imposed. (Id.)

### III. PETITIONER'S CLAIMS

Petitioner asserts a general denial of due process, and raises two specific claims with regard to the disciplinary violation. (See Pet. at 11.) First, Petitioner asserts that the incident report violated the BOP disciplinary process because it was served on him more than 24 hours after the incident. (Id.) Second, Petitioner asserts the DHO's charges are based on insufficient evidence due to the DHO's failure to review video surveillance of the incident after his denial of wrongdoing. (Id.)

#### A. Process Met Minimal Due Process Requirements.

In this case, Petitioner does not argue he was denied any of the five procedural due process requirements due him. He does, however, assert a general denial of due process. The record reflects that Petitioner's procedural due process rights were satisfied.

When a prison disciplinary proceeding may result in the loss of good conduct time, due process requires that the prisoner receive: (1) advance written notice of the disciplinary charges at least 24 hours prior to the hearing; (2) an impartial hearing body; (3) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (4) assistance for illiterate inmates or in complex cases; and (5) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Superintendent v. Hill, 472 U.S. 445, 454-455 (1984); Wolff v. McDonnell, 418 U.S. 539, 563-567 (1974).

4

Petitioner was provided advanced written notice of the violation and his rights when a copy of the report was delivered to him approximately four hours after the incident report was written, on June 13, 2012, at 12:20 p.m. (Ex. 1, Hernandez Decl.; Att. 4.) Although Petitioner twice rejected the opportunity, he was afforded the opportunity to call witnesses and present documentary evidence for his defense prior to his DHO hearing and again at his DHO hearing. (Ex. 1, Hernandez Decl.; Att. 4C, 4D, and 4E.) Petitioner's hearing was conducted by Alternate DHO C. Sylvester, who was not involved with the incident, investigation, or the Unit Discipline Committee. (Ex. 1, Hernandez Decl.; Att. 4A, 4B.) Petitioner was provided the opportunity to request staff assistance prior to his disciplinary hearing, but also rejected that option. (Ex. 1, Hernandez Decl.; Att. 4C, 4E.) After Petitioner's hearing, the DHO provided Petitioner with a written statement of the evidence for his decision and the reasons relied upon in arriving at the decision. (Ex. 1, Hernandez Decl.; Att. 4E.)

Therefore, Petitioner received all five of the procedural due process considerations enumerated in Wolff.

Plaintiff's substantive due process rights also were met.

**B.     Claim One: BOP's Failure to Provide Incident Report Prior to Hearing**

1.     Petitioner Was Provided Sufficient Notice of the Incident

Petitioner alleges that his procedural due process rights were violated when the BOP served the incident report on him contrary to BOP disciplinary regulations. As discussed more fully below, all parties understood that the incident was alleged to have occurred on June 13, 2012, the same day Petitioner received the incident report.

Petitioner contends that the BOP violated due process by failing to provide notice of the incident within 24 hours. (Pet. at 11.) However, Petitioner's argument misstates the law. Due process requires that an inmate receive written notice of the charges at least 24 hours prior to disciplinary proceedings, not within 24 hours of the incident. Wolff, 418 U.S.

5

at 563-567. Petitioner's argument appears to be based on the apparent typographical error in Boxes 11 and 12 of the incident report indicating that the incident took place on June 13, 2011. (See Ex. 1, Hernandez Decl.; Att. 4A.) Box 4 of the incident report identifies the date of the incident as June 13, 2012. (Id.) That was also the date the incident report was written and the date of the investigation. (Id., Att. 4B.) Considering that the date of the incident was written to be June 13, 2012, the investigation occurred on that date, Petitioner was given a notice of the incident on that date, and he received a disciplinary hearing less than a month later, the weight of the evidence confirms that the reference to the June 2011 date was an error.

      Moreover, it appears that Petitioner understood at each step of the disciplinary process that the date of the incident was June 13, 2012, not 2011. At the disciplinary hearing, the date of incident was alleged to have been June 13, 2012. Petitioner did not attempt to correct this at that time. (See Ex. 1, Hernandez Decl. ¶ 10, n.2.) In addition, at both levels of his administrative appeals, Petitioner admitted that the incident date was June 13, 2012. In his Regional Administrative Remedy Appeal, Petitioner requests video camera footage to be reviewed "on the date of the incident 6-13-2012." (Ex. 1, Hernandez Decl.; Att. 4F.)

      Similarly, in his Central Office Administrative Remedy Appeal, Petitioner explained: "On 6-13-2012 while leaving the kitchen's dining room area, I was randomly picked to submit to a pat search" by the reporting officer. (Ex. 1, Hernandez Decl.; Att. 5A.) He explained that he was released after the pat down, but while walking back into the corridor minutes later, the reporting officer identified him as the person who stole the chicken and potatoes. (Id.) His account of the date of the incident is consistent with the other documentary evidence and confirms that he received notice on the same day as the incident, June 13, 2012. Based on this evidence, Petitioner received notice of the incident within 24 hours of the incident, and more importantly, was provided written notice of the charges more than 24 hours before the disciplinary hearing.

The BOP did not violate Petitioner's due process right to written notice at least 24 hours before the disciplinary hearing.

### C.    Claim Two: DHO's Failure to Review Video Surveillance

#### 1.    Petitioner's Due Process Rights Met as All Procedural Considerations Satisfied and Decision was Supported by "Some Evidence"

Petitioner alleges that his due process rights were violated when the BOP denied him access to video surveillance he intended to present at his disciplinary hearing and when the DHO failed to view the video surveillance before rendering a decision. (See Pet. at 11.) Petitioner asserts that he requested evidence for his defense in the form of video surveillance of the corridor where the pat down search took place. (Id.) Petitioner also alleges that without the video evidence, the report and the information from the investigation are insufficient to support the charge against him. (Id.) (arguing that his denial of wrongdoing "should've invoked [the investigating officer] to review the video tapes…to determine whether petitioner was the actual inmate").

It appears that all of Petitioner's procedural and substantive rights were satisfied, and due process was provided.

*i.   Petitioner Had Opportunity to Present Documentary Evidence*

As discussed above, when a prison disciplinary proceeding may result in the loss of good conduct time, due process requires that the prisoner receive an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense. Superintendent v. Hill, 472 U.S. 445, 454-455 (1984); Wolff v. McDonnell, 418 U.S. 539, 563-567 (1974).

For the first time in the Regional Appeal, Petitioner complained that he sought to have video surveillance produced as evidence of his innocence. (See Ex. 1, Hernandez Decl.; Att. 4C, 4D, and 4E.) Petitioner's assertion that he requested evidence is not supported by documentary evidence. Contrary to his assertions, the disciplinary hearing

7

forms indicate that he did not wish to present any witnesses or documentary evidence on his behalf. (Id.) Prior to the hearing, Petitioner was given the opportunity to call witness and present evidence. (Id.) He was given an opportunity to identify the witnesses and documentary evidence he wished to present in his defense. (Id.) Petitioner declined the offer. (Id.) There is no evidence that he requested the videotape evidence be produced or that he was denied the opportunity to present requested evidence either prior to or during the hearing. (Id.)

Therefore, Petitioner received the due process protections to which he was entitled with regard to presentation of witnesses and documentary evidence.

### ii. DHO's Decision Supported by Some Evidence

The DHO's decision met the appropriate evidentiary standard in finding the Petitioner guilty of the charged offence. The evidence relied on during Petitioner's discipline hearing satisfies the "some evidence" standard.

Due process requires that the decision be supported by "some evidence." even if that evidence might be characterized as meager Hill, 472 U.S. at 455. The Supreme Court in Hill stated:

> "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."

Hill, at 455-456 (citations omitted.) Only if the record is devoid of evidence, providing no support for a disciplinary board's decision, would a decision to revoke gain time credits violate due process. Id. at 457.

The DHO's decision met the appropriate evidentiary standard in finding the Petitioner guilty of the charged offense. In support of its decision, the DHO relied on the written statement of the reporting officer. (Ex. 1, Hernandez Decl.; Att. 4E.) Such

8


evidence supported the fact that Petitioner was positively identified as the inmate who was caught with raw chicken and potatoes during a random pat down search. (Id.) Additionally, the record contains the Petitioner's admission that he stole the food, when he stated "Yes, it's true I had those items." (Ex. 1, Hernandez Decl.; Att. 4B.)

The statement by the reporting officer was "some evidence" that Petitioner was the person who was accused of and committed the violation. The fact that the investigating officer could have reviewed the videotape (if any existed) or taken photographs of the stolen raw food products does not undermine the basis of the DHO's finding of some evidence. Furthermore, the fact that the DHO found the written statement of Officer Marquez more credible than Petitioner's initial statement denying the charges does not undermine a finding that "some evidence" exists. The some evidence standard is a low threshold, and will be met even when evidence to the contrary is presented.

For all of the reasons contained in the DHO's report, "some evidence" exists to support a finding that Petitioner stole the raw food products. Therefore, the evidence is sufficient to meet the deferential "some evidence" standard required under Hill.

*iii. Harmless Error Applies as Petitioner Failed to Establish Video Surveillance Would Change Outcome in Hearing*

Prison officials' errors in denying an evidentiary request are subject to harmless error review. Howard v. United States Bureau of Prisons, 487 F.3d 808, 813 (10th Cir. 2007) (citing Grossman v. Bruce, 447 F.3d 801 (10th Cir. 2006)); Powell v. Coughlin, 953 F.2d 744 (2nd Cir. 1991); Lee v. Kramer, WL 4507584, at *4 (E.D. Cal. October 7, 2008). Even when prison officials error in denying evidentiary requests, the Court must deny Petitioner's request for a writ of habeas corpus if the error was "harmless." A deprivation of due process will be harmless and a habeas petition will be denied unless the error had a "substantial and injurious effect or influence in determining the [factfinder's] verdict." Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S. Ct. 1710, 123

L.Ed.2d 353 (1993). Petitioner must show that he was prejudiced so as to justify federal habeas relief. (Id.)

Petitioner has merely denied that he was the inmate Officer Marquez caught with the stolen food product. Petitioner has failed to establish an alternate theory regarding the incident that would change the outcome of the hearing had the video surveillance been reviewed or provided to him. Petitioner denied the opportunity to call witnesses and present documentary evidence twice during the disciplinary process. (See Ex. 1, Hernandez Decl.; Att. 4C, 4D, and 4E.) The record supports a reasonable inference that other inmates were present at the time of the incident, indicating that Petitioner could have called an inmate witness to testify as to what actually happened if not as reported by Officer Marquez. (Id.) Furthermore, not only has Petitioner failed to offer an alternate explanation in his own defense, he has previously admitted to the charged offense. (Id.) Even if the failure to provide video surveillance resulted in error, such error was harmless as Petitioner has not shown that he was prejudiced so as to justify federal habeas relief.

The Court finds no due process violation with regard to the findings of the disciplinary proceeding at issue in this case. The Court recommends that the petition for writ of habeas corpus be denied.

## IV.    RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These Findings and Recommendations are submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, Petitioner may file written objections with the Court.  Such a document should

be captioned "Objections to Magistrate Judge's Findings and Recommendations. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   February 10, 2015         /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE

11